# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CR-00087-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| MARCUS ISAIAH PRICE, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to 28 U.S.C. § 636 and standing orders of the District Court for a Report and Recommendation on Defendant Marcus Isaiah Price's ("Defendant's") Motion to Suppress the statement he gave to law enforcement [Doc. 48]. The Government has filed its response in opposition [Doc. 61]. On May 22, 2017, the Court conducted an evidentiary hearing on the motion. For the reasons stated, the Court recommends the Motion be DENIED.

### I.   Findings of Fact

Marcus Price is charged with, among other things, a conspiracy to distribute 280 grams or more of crack cocaine. [Doc. 3, *Indictment*]. He has filed a motion to suppress the statement he gave to law enforcement in which he admitted to selling and possessing narcotics. He claims that this statement should be suppressed because it was obtained by police coercion. Specifically, Defendant asserts that he was "induced to make a statement … on the promise that he would be allowed to see his children and his girlfriend…." [Doc. 49, pg. 4].

1

At the evidentiary hearing, the only witnesses to testify were Investigator Thomas Garrison ("Garrison"), with the Johnson City Police Department, and FBI Special Agent Michelle Yaroma. Based on the testimony from the hearing, the Court makes the following findings of fact.

During the summer of 2016, Inv. Garrison used a confidential informant on two occasions to purchase drugs from Defendant, who was on state probation at the time. In an effort to further his investigation, Garrison wanted Defendant's cooperation and so he asked Defendant's Probation Officer Kelly Jacobs to arrange a meeting with Defendant where he could meet with him. Jacobs scheduled the meeting for July 12, 2016 at 3:00 p.m. When Defendant arrived, Garrison, Jacobs, and FBI Special Agent Matthew Gryder were present. Garrison told Defendant about the evidence they had collected against him thus far and sought his willingness to cooperate. Garrison emphasized to Defendant that they could not promise him anything and that Defendant would eventually be indicted even if he did cooperate. In response, Defendant stated that he did not recall selling any drugs. When Defendant declined Garrison's invitation to cooperate, Garrison placed him under arrest for the prior drug sales and seized Defendant's vehicle, which he had driven to the probation office and had used in the prior drug sales.

After completing the required paperwork for the seizures and taking an inventory of the vehicle's contents, Garrison transported Defendant to the Washington County Detention Center. While Garrison took Defendant to the detention center, Gryder and other agents went to search Defendant's residence as a condition of his probation included his consent to searches of his home.

En route to the detention center, Defendant had a change of heart. He advised Garrison that he would talk with him if he would permit him to smoke a cigarette. After Garrison clarified Defendant's request, Garrison turned around and headed to the FBI field office in Johnson City to conduct the interview. On arrival, Garrison gave Defendant one of the cigarettes that was in

2

Defendant's property and Defendant smoked outside the FBI office. Garrison then escorted Defendant into the FBI's office where they met Special Agent Michelle Yaroma. The three went into the conference room where Garrison read Defendant the *Miranda* warnings. On the waiver form, Garrison wrote down exactly what Defendant said in response to his reading each right. Defendant acknowledged that he understood his rights and voluntarily waived them. He signed the waiver form.

He remained at the FBI office between two and three hours. The interview proceeded on a cordial basis, not confrontational at all. Garrison and Yaroma described the interview as "conversational." Neither Garrison nor Yaroma made any promises to Defendant to induce him to talk. They did not promise that they would allow him to see his children if he gave a statement. While Defendant gave an incriminating statement about his involvement in the drug trafficking trade, he was conflicted as to whether he should cooperate. He wanted to seek the counsel of his mother and asked permission to call her. Garrison permitted him to do so. Defendant ultimately declined to cooperate.

In the meantime, during the search of Defendant's house, Gryder discovered a large quantity of crack cocaine. He called Garrison about their discovery. Gryder then returned to the FBI office and also spoke with Defendant. Gryder asked Defendant's permission to search his three cell phones. Defendant consented. Gryder then downloaded the contents of the phones for further analysis. While that occurred, Defendant remained in the room alone. Once the downloads were complete, Garrison transported Defendant to the detention center.

**II.    Discussion**

Any confession by a defendant must be made "freely, voluntarily and without compulsion or inducement of any sort." *Haynes v. Washington*, 373 U.S. 503, 513 (1963). The Sixth Circuit

has established the following three-step analysis in determining whether a statement was involuntary due to police coercion: "'(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; (iii) and the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statements.'" *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016)(quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)). If the Defendant cannot show objective coercion by the officers, the analysis ends since "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *United States v. Newman*, 889 F.2d 88, 95 (6th Cir. 1989).

The actions taken by Garrison were not "objectively coercive." Garrison simply responded to Defendant's suggestion that he would be willing to speak with him if Garrison allowed him to smoke a cigarette. Garrison made no promises to induce Defendant to talk with him. In fact, the conversation between Garrison and Defendant was cordial and conversational, not threatening or intimidating. At 5:35 p.m., Garrison fully apprised Defendant of his rights under *Miranda* and Defendant voluntarily waived those rights. Garrison noted that Defendant had completed the eleventh grade and could read and write without difficulty. After each warning, Garrison had Defendant verbally acknowledge that he understood what Garrison had just said. The amount of time from the beginning of the meeting at 3:00 p.m. until the end of the interview at the FBI's field office in Johnson City, Tennessee at was not unusual under the circumstances. There was nothing to suggest that law enforcement used any physical sort of punishment or mental coercion prior to questioning Defendant. Under the totality of circumstances, there was nothing that officers did that would even come close to crossing any constitutional line.

### III. Conclusion

Based on the foregoing reasons, the Court respectfully RECOMMENDS that Defendant's motion to suppress [Doc. 48] be DENIED.[1]

> Respectfully submitted,
>
> s/Clifton L. Corker
> United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).