UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARCUS ISAIAH PRICE,                 )
                                     )
            Petitioner,              )
                                     )
v.                                   )          No. 2:20-CV-00055-JRG-CRW
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Respondent.              )

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Marcus Isaiah Price's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], Mr. Price's Memorandum of Law [Doc. 2], and the United States' Response [Doc. 9]. For the reasons herein, the Court will deny Mr. Price's motion.

## I.    BACKGROUND

In 2016, the United States brought charges against Mr. Price in a four-count indictment, in which it alleged violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. Leading up to the indictment, Investigator Thomas Garrison of the Johnson City Police Department had used a confidential informant to make two controlled purchases of drugs from Mr. Price. [R&R, Doc. 67, at 2, No. 2:16-CR-00087-1-JRG-MCLC]. Mr. Price, following his arrest, participated in an interview with law-enforcement officials, namely Investigator Garrison and Special Agent Michelle Yaroma of the Federal Bureau of Investigation, and admitted to selling and possessing narcotics. [*Id.* at 1–3]. Mr. Price's attorney moved to suppress the statements comprising Mr. Price's admission, [Def.'s Mot. Suppress, Doc. 48, at 1–2], and after conducting an evidentiary hearing, at which Investigator Garrison and Agent Yaroma both testified, former United States

Magistrate Judge Clifton L. Corker recommended the Court deny Mr. Price's motion, [R&R at 3–5]. The Court adopted Judge Corker's recommendation after Mr. Price did not object to Judge Corker's factual or legal findings. [Order, Doc. 80, No. 2:16-CR-00087-1-JRG-MCLC].

A petit jury later found him guilty of all four counts of the indictment, [Verdict Form, Doc. 91, at 1–3, No. 2:16-CR-00087-1-JRG-MCLC], and the Court went on to sentence him to 168 months' imprisonment, [J., Doc. 114, at 2, No. 2:16-CR-00087-1-JRG-MCLC]. He appealed his convictions and sentence on several grounds, and the Sixth Circuit, in rejecting his appeal, recited the facts of his case as follows:

> A jury convicted Marcus Price on various drug charges stemming from his possession and distribution of crack cocaine, and the district court later imposed a below-Guidelines sentence. On appeal he challenges the sufficiency of the evidence for his conspiracy conviction, the court's determination of attributable drug quantity, and the denial of two motions—one by him and one by his attorney—requesting new counsel. Because we find no error warranting reversal, we AFFIRM Price's conviction and sentence.

> I.

> With the help of a confidential informant, law enforcement conducted two controlled purchases of crack cocaine from Price. Less than a week later, investigators interviewed Price, and he admitted that an individual in Atlanta supplied him with drugs to sell. According to Price, though he purchased only "an ounce or two" at first, his supplier told him to "step it up" and "fronted [him] eight ounces of crack cocaine" at the third transaction, moving him to sell larger amounts to drug dealers. Price went on to provide information about local dealers he had supplied, the quantities he sold them, and the frequency of the sales. He also consented to the search of his cell phone, which produced text messages corroborating his statement to authorities.

> That same day, investigators searched Price's apartment and seized multiple baggies filled with narcotics, later confirmed to total 251.95 grams by the Tennessee Bureau of Investigation ("TBI"). Of the bags seized, TBI tested one that contained a white powdery substance and determined it to be cocaine base. The rest contained a rock-like substance. TBI tested just one and confirmed it to be cocaine base (or crack cocaine). At trial, the TBI analyst testified that the untested bags were "visually consistent" with the other rock-like substance in the case that was positively identified as cocaine base.

> A grand jury indicted Price on several drug-related charges, including conspiring to distribute and possess with the intent to distribute at least 280 grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1). Almost two months

2

later, after Price's court-appointed attorney had to withdraw, the court appointed Angela Morelock as counsel. Shortly thereafter, Price filed a pro se motion requesting a new attorney, which was resolved a few days later after a meeting with Morelock addressed his concerns. A few months later, Price again moved the court to give him a new lawyer, and the court denied the motion after holding a hearing.

Then, just eight days before trial was to begin, Morelock moved to withdraw as Price's attorney. The court once again held a hearing. At that hearing, Price moved orally for new counsel. The court heard testimony from Morelock, her defense investigator, and Price, outside the presence of the government. Ultimately, the court denied the motions, finding that Morelock had "in fact done everything she could to prepare for this trial" with "little or no assistance" from Price, and that it did "not have any confidence that replacing [Morelock] with another lawyer would resolve [the] problem." After a two-day trial, the jury found Price guilty on all counts. But on the conspiracy count, it found him responsible for less than 280 grams, a lesser quantity than charged in the indictment. At sentencing, however, the judge, by a preponderance of the evidence, attributed 283.62 grams to Price. Importantly, that total included the untested 135.25 grams of "visually consistent" rocklike substance seized from Price's apartment. The court ultimately imposed a sentence of 168 months, deeming the Guidelines range of 360 months to life to be "unduly harsh." Price appealed.

[Sixth Circuit Op., Doc. 135, at 1–3, No. 2:16-CR-00087-1-JRG-MCLC]. Mr. Price, having failed to capitalize on his appeal, has now timely moved for relief under 28 U.S.C. § 2255. The United States opposes his motion. Having carefully reviewed Mr. Price's claims and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Id. § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which

3

had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d

4

695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

In pursuing relief under § 2255, Mr. Price raises multiple claims of ineffective assistance of counsel, alleging that his attorney was ineffective because she failed to file a suppression motion, failed to raise certain objections at trial, failed to interview witnesses, and failed to formulate an effective trial strategy. [Pet'r's Mem. at 3–8]. Mr. Price also asserts that the Court applied USSG § 4B1.1's career-offender enhancement to him at sentencing and erred in doing so.[1] [*Id.* at 8–10]. In response, the United States maintains that his claims are too conclusory to warrant relief and otherwise fail on the merits.

#### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely

---

[1] USSG § 4B1.1 increases a defendants offense level if the defendant is a "career offender." Under USSG § 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a).

to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a petitioner contests her sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that her counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that her counsel's deficient performance was so serious that it deprived her of her fundamental right to due process, *id.*, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.[2] A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either prong of this test, her claim of ineffective assistance of counsel fails. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for

---

[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691 (citation omitted).

### 1. Failure to File a Suppression Motion: Unlawful Search and Seizure

In the context of § 2255 proceedings—and, more specifically, in the context of a claim of ineffective assistance of counsel—Mr. Price cannot establish deficient performance on his attorney's part merely by faulting her for not filing a suppression motion. Rather, he must show that a suppression motion would have been fruitful. *See Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (stating that "[t]rial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance'" (alteration in original) (quotation omitted)); *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("[C]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument."); *see also Brown v. United States*, No. 20-6206, 2021 WL 1561481, at *2 (6th Cir. Mar. 31, 2021) (recognizing that "counsel cannot be deemed ineffective for failing to file a meritless motion" (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010))). In attempting to make this showing, Mr. Price argues that his attorney was ineffective because she did not move to suppress the drugs that law-enforcement officers found during their search of his apartment—a search that, he claims, was unlawful because the officers did not have a search warrant or his consent and lacked probable cause. [Pet'r's Mem. at 4].

But as the United States points out, and as Judge Corker previously found in his report and recommendation, Mr. Price was on state probation when officers searched his apartment, and a condition of his probation included his consent for law-enforcement officers to conduct

searches of his apartment. [R&R at 2]. This condition of his probation, and his probationary status in general, affects an analysis under the Fourth Amendment, which guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A law-enforcement officer's warrantless search of a residence is presumptively unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980), and a defendant may move to exclude any evidence that the officer discovered at the time of the search, Fed. R. Crim. P. 12(b)(3)(C); *United States v. Haygood*, 549 F.3d 1049, 1053 (6th Cir. 2008).

"[T]he Fourth Amendment's requirements," however, "are often more easily satisfied in the context of searching a probationer's person or property," *United States v. Pope*, 852 F. App'x 945, 949 (6th Cir. 2021) (citing *United States v. Fletcher*, 978 F.3d 1009, 1015 (6th Cir. 2020)), because a term of probation—a form of punishment—creates a "balance of governmental and private interests," *United States v. Knights*, 534 U.S. 112, 121 (2001) (citations omitted). So when a law-enforcement officer enters a probationer's residence by relying on a condition of probation, a warrant is unnecessary so long as the officer has a reasonable suspicion that the probationer is engaging in criminal activity, *id.*,[3] and that activity need only be a violation of the probationer's terms of probation, not a violation of a separate criminal statute, *see United States v. Herndon*, 501 F.3d 683, 689 (6th Cir. 2007) (explaining that "a probationer's violation of the terms of probation is comparable to his violation of a criminal statute" (citations omitted)).

Yet Mr. Price, in arguing that law-enforcement officers violated his Fourth Amendment rights and that his attorney was ineffective for not filing a suppression motion in response to this

---

[3] A reasonable suspicion "requires more than an 'inarticulate hunch' but less evidence than what is necessary for either a probable-cause or a preponderance-of-the-evidence standard." *United States v. Pope*, 852 F. App'x at 950 (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *United States v. Herndon*, 501 F.3d 683, 691 (6th Cir. 2007))).

8

violation, does not argue that the officers lacked reasonable suspicion. Rather, he contends that they lacked probable cause—a legal standard that, because of his probationary status and his probationary conditions, does not apply to him. And similarly, his argument that the officers lacked a search warrant or his consent cannot avail him because they conducted the search by relying on a condition of his probation. [R&R at 2]. In short, Mr. Price, in failing to argue that the officers were without a reasonable suspicion to enter his apartment and failing to recognize that the officers did not need a search warrant or his consent to enter his apartment, makes no headway in demonstrating that a suppression motion would have been fruitful. *See Brown*, 231 F. App'x at 475; *see also Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a pro se litigant, it has limits. Liberal construction does not require a court to conjure allegations on a litigant's behalf[.]" (internal citation and citations omitted)). The Court therefore cannot conclude that his attorney was deficient in failing to file this motion.

### 2. Failure to File a Suppression Motion: Officer Garrison's Testimony

Mr. Price also asserts that his attorney was ineffective "during the suppression phase" because she failed to move to suppress Investigator Garrison's testimony from the suppression hearing. [Pet'r's Mem. at 4]. He alleges Investigator Garrison testified that Mr. Price admitted to selling and possessing narcotics but that Agent Yaroma contradicted Investigator Garrison's testimony by later testifying that she did not remember whether Mr. Price made this admission. [Pet'r's Mem. at 5]. In Mr. Price's view, Investigator Garrison's testimony "should have been suppressed" not only because it was "inconsisten[t]" with Agent Yaroma's testimony but also because it was "hypothetical (hearsay) information." [*Id.*]. He also alleges that his attorney's failure to move for the suppression of Investigator Garrison's testimony was prejudicial because

9

it "caused [him] to be found guilty at trial" and was "[im]proper grounds for conviction." [*Id.* at 5–6]. In response, the United States contends that "Agent Yaroma's failure to recall does not contradict Garrison's testimony and is not a proper basis for suppression." [United States' Resp. at 10].

Mr. Price's claim is faulty for several reasons. First, his account of Agent Yaroma's testimony is not entirely accurate. Although Agent Yaroma did testify that she could not recall specific statements that Mr. Price had made during the interview, she testified that the interview had left her with the impression that he had in fact made incriminating statements about selling and possessing narcotics:

> Q. If I could just clarify something real quick. Special Agent Yaroma, during the time that you were with Officer Garrison and Mr. Price, did he make incriminating statements about his drug dealing?
>
> A. It seemed to me, because he was—it was a custodial interview, but that there was something there that Officer Garrison found to be incriminating. As far as what the specifics were, it seemed—I can't recall specifics, but it did seem that he was engaged in some way in drug dealing.

[Suppression Hr'g Tr., Doc. 91, at 70:24–25, 71:1–8, No. 2:16-CR-00087-1-JRG-MCLC].

Second, as the United States rightly argues, the filing of a suppression motion is not the correct action for an attorney to take in response to a witness's contradictory testimony because a suppression motion is a challenge to the legality of "evidence seized," *Davis v. United States*, 564 U.S. 229, 258 (2011) (Breyer, J., dissenting), or evidence "in hand," *McCray v. Illinois*, 386 U.S. 300, 307 (1967), not to the propriety of contemporaneous testimony. The proper way to challenge adverse witnesses' contradictory testimony is to cross-examine those witnesses and impeach their truthfulness. Mr. Price's attorney cross-examined both Investigator Garrison and Agent Yaroma, and Mr. Price does not allege that her cross-examination of these witnesses was constitutionally deficient. *See generally Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012)

10

("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (quotation omitted)); *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire [proceeding] with obvious unfairness." (citation omitted)). His argument that his attorney should have moved to suppress Investigator Garrison's testimony therefore has no merit.

Lastly, to the extent Mr. Price contends that his attorney was ineffective because she did not object to Investigator Garrison's testimony as "hypothetical (hearsay) information," this contention is a nonstarter because the Federal Rules of Evidence do not apply to suppression hearings. *See United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012) ("The Rules of Evidence are inapplicable . . . to the admission of evidence presented at suppression hearings." (citing *United States v. Matlock*, 415 U.S. 164, 172–73 (1974))); *United States v. Martin*, Criminal No. 07-CR-20605-1, 2013 WL 55693, at *3 (E.D. Mich. Jan. 3, 2013) (stating that "the hearsay rule is inapplicable to suppression hearings"). Mr. Price therefore fails to establish that his attorney rendered deficient performance during "the suppression phase" of his underlying criminal case, and his claims that his attorney was ineffective during this phase are meritless.

### 3. Failure to Raise Certain Objections during Trial

Next, Mr. Price argues that his attorney was ineffective because she failed to raise certain objections during trial, including (1) a failure to object to text messages that the United States admitted into evidence at trial but failed to disclose during discovery, (2) a failure to object to "'unproven statements' allegedly made by [him]," (3) a failure to object to "the alleged [text] messages meaning to turn the instant offense into a conspiracy," and (4) a failure to object to the

11

United States' closing argument. [Pet'r's Mem. at 6–7]. The Court will now address Mr. Price's arguments in sequential order.

### i. *Failure to Object to Text Messages*

According to Mr. Price, the United States' alleged failure to disclose text messages that it relied on at trial "disallow[ed] [him] adequate time to formulate a defense to" these text messages, and he claims that his attorney was ineffective for not objecting to their admission. [Pet'r's Mem. at 6]. In response, the United States describes his allegations as "incorrect" and insists that "[t]he text messages came from [his] own cellular phones[,] and [that] the extraction report with the entire contents of the phones was provided as part of discovery." [United States' Resp. at 11].[4] The Court, however, need not wade into the parties' factual dispute because Mr. Price's allegations, even when the Court accepts them as true, cannot form a cognizable legal claim.

The fact that the United States, allegedly, did not disclose the text messages during discovery and withheld them until trial is not, without more, an infringement of Mr. Price's constitutional rights because "[t]here is no general constitutional right to discovery in a criminal case." *United States v. Chalhoub*, 946 F.3d 897, 904 (6th Cir. 2020) (alteration in original) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 555 (1977)); *see Wagle v. Sherry*, Case No. 2:06-CV-00057, 2015 WL 10818617, at *5 (W.D. Mich. July 14, 2015) ("[T]here is no obligation for the prosecution to disclose *all* evidence to a defendant." (citing *Weatherford*, 429 U.S. at 559). In alleging prejudice, however, Mr. Price's claim does more closely resonate as a constitutional violation because he pleads that the alleged delay in the disclosure of the text messages affected

---

[4] Mr. Price has not requested leave to obtain the discovery in his underlying criminal case and substantiate his position that the United States did not surrender the text messages with that discovery. *See* Rules Governing § 2255 Proceedings, Rule 6 (allowing courts to permit petitioners to engage in discovery upon a showing of good cause).

his ability to prepare an adequate defense. [Pet'r's Mem. at 6]; *see United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007) ("If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs 'unless the defendant has been prejudiced by the delay in disclosure.'" (quotation omitted)).[5]

But Mr. Price does not allege *how* the alleged non-disclosure of the text messages hampered his defense, *see Jefferson*, 730 F.3d at 547 ("[C]ourts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" (quotation and citation omitted)), and the absence of this allegation is fatal to his claim. Indeed, to establish prejudice under *Brady*, Mr. Price must allege that "there is a reasonable probability that, had the [text messages] been disclosed, the result of the proceeding would have been different," *Cone v. Bell*, 556 U.S. 449, 469–70 (2009), and a "reasonable probability" means that "the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the [criminal proceedings],'" *Smith v. Cain*, 565 U.S. 73, 75–76 (2012) (alterations in original) (quotation omitted); *see Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").

Mr. Price does not allege, though, that the outcome of his trial would have likely been different if the United States had disclosed the text messages. In fact, he does not even allege that the text messages consisted of exculpatory or impeachment evidence—an allegation that is vital to a *Brady* claim. *Strickler*, 527 U.S. at 281–82. In sum, Mr. Price's allegations provide the

---

[5] In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

13

Court with no basis to conclude that his attorney failed to raise a merit-worthy objection to the alleged non-disclosure of the text messages, and his claim of ineffective assistance of counsel therefore fails. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) (recognizing that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"); *see also Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003) (stating that an attorney "is not required by the constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation").

ii. *Failure to Object to "Unproven Statements"*

Next, Mr. Price claims that his attorney was ineffective because she failed to object to "'unproven statements' allegedly made by [him] but with NO evidence," [Pet'r's Mem. at 6], though his failure to identify these statements prompts the United States to contend that he has failed to sufficiently develop his allegations, [United States' Resp. at 6]. In referring to these unproven statements, Mr. Price is presumably homing in on Investigator Garrison's testimony that he was involved in selling and possessing narcotics—testimony that, in Mr. Price's view, warranted "suppression" when Investigator Garrison offered it during the suppression hearing. Investigator Garrison repeated this testimony during trial, chronicling in detail Mr. Price's drug-related transactions with the confidential informant. [Trial Tr., Doc. 131, at 45–107].

Contrary to Mr. Price's assertion otherwise, Investigator Garrison's testimony *is* evidence that Mr. Price was involved in selling and possessing narcotics, and the jury was free to believe, or draw any reasonable inferences from, this testimony. *See United States v. Johnson*, No. 97-2164, 1999 WL 357826, at *1 (6th Cir. May 26, 1999) ("[The defendant] complains that all of [the government's witnesses'] testimony was . . . unreliable. Whatever its weaknesses, however, this testimony is evidence pointing to guilt."). Mr. Price's contention that his attorney should have

14

objected to this testimony because it was "unproven" and "[not] evidence" is therefore baseless. *See Mapes*, 171 F.3d at 427 (stating that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"). In sum, his claim of ineffective assistance of counsel fails not only because he does not adequately allege deficient performance but also because he does not allege that he suffered any appreciable form of prejudice.

### iii. *Failure to Object to Text Messages*

Mr. Price goes on to allege that his attorney was ineffective because she failed to object to "the alleged [text] messages meaning to turn the instant offense into a conspiracy." [Pet'r's Mem. at 6]. But this allegation is far too conclusory to warrant the Court's consideration. Mr. Price, for instance, does not identify the specific text messages at issue or the grounds on which his attorney could or should have objected to them. Also, he does not allege that he suffered prejudice from his attorney's failure to object to the text messages. Besides, his attorney *did* object to the text messages by arguing that the United States had not established a foundation showing that they came from Mr. Price. [Trial Tr. at 48:7–17]. Mr. Price fails to acknowledge this objection or explain how it rendered his attorney's performance objectively unreasonable. He therefore falls well short of satisfying *Strickland*'s two-part test.

### iv. *Failure to Object to the United States' Closing Argument*

Lastly, Mr. Price, in claiming that his attorney was ineffective for failing to raise certain objections at trial, faults his attorney for not objecting to the United States' closing argument. According to Mr. Price, his attorney should have objected to the United States' closing argument because (1) "a [confidential informant] can not [sic] be classified as a 'co-conspirator' within a conspiracy," (2) the United States relied on "text message of unknown individuals as proof of a conspiracy," and (3) the United States relied on "false allegations of key government witnesses

15

as to the facts of this case." [Pet'r's Mem. at 7]. In response, the United States contends that Mr. Price's allegations are too conclusory to warrant relief and that he cites "no legitimate basis for counsel to object to the prosecutor's closing argument." [United States' Resp. at 9].

As to Mr. Price's first argument, "[t]he rule that government agents do not count as co-conspirators . . . is limited to situations in which the conspiracy involves only one defendant and a government informer," *United States v. Hayden*, 68 F. App'x 530, 532 (6th Cir. 2003) (citation omitted), but this situation does not apply to Mr. Price's case because the evidence showed that he conspired to distribute drugs with "Sam" or "Sam Bone," his supplier in Atlanta, [Trial Tr. at 99:3–22]. The jury found this evidence sufficient to convict Mr. Price of conspiring to distribute and possess with the intent to distribute cocaine, and on collateral review, he cannot contest the sufficiency of this evidence. *See United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) ("[W]e have repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." (citation omitted)); *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (citation omitted); *United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961) ("A Section 2255 proceeding cannot be used as a substitute for an appeal. The sufficiency of the evidence to prove the alleged offenses will not be reviewed in such a proceeding." (citations omitted)). In addition, as the United States points out, Mr. Price's attorney succeeded in "obtain[ing] a Jury Instruction that informed the jury that an agreement between a defendant and a government agent or informer was insufficient to support a conspiracy conviction." [United States' Resp. at 12]. The Court therefore finds no grounds to conclude that Mr. Price's attorney performed deficiently during her representation of Mr. Price, and more specifically, the Court cannot conclude that she had a valid legal basis to object to the United States' closing statement on the grounds that Mr. Price raises in first argument. *See Mapes*, 171

F.3d at 427 (stating that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument").

Mr. Price's two remaining arguments—i.e., that his attorney was ineffective for failing to object to the United States' reliance on "text message of unknown individuals as proof of a conspiracy" and to "false allegations of key government witnesses as to the facts of this case," [Pet'r's Mem. at 7]—are too cadaverous to warrant relief. Mr. Price does not identify the false allegations that he complains of, the key government witnesses of concern, or the legal grounds on which his attorney could or should have mustered objections to either. Similarly, he neither identifies the text messages at issue nor the grounds on which his attorney could or should have objected to them, apart from contending that they were from "unknown individuals." But this contention rings hollow because Investigator Garrison testified that at least some of the text messages consisted of an exchange between Mr. Price and the confidential informant. [Trial Tr. at 50:2–23, 79:1–11]. In addition, Mr. Price does not plead that his attorney's alleged conduct during the United States' closing arguments prejudiced him, or in other words, that her conduct was so serious that it would have created the reasonable probability of a different outcome in his trial. *Cf. Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002) ("[The petitioner's] conclusory allegations are insufficient to justify a finding that an opening statement would have created the reasonable probability of a different outcome in his trial."). Mr. Price's claims of ineffective assistance of counsel are therefore without merit, and he fails to show that he is entitled to the extraordinary remedy of § 2255 relief.

### 4. Failure to Question Key Witnesses at Trial

Mr. Price goes on to allege that his attorney rendered ineffective assistance because she failed "to question the credibility of key witnesses as to [the confidential informant] and/or the

credibility of [the confidential informant]." In response, the United States argues that Mr. Price's allegations are conclusory because he does "not identify the 'key witnesses' that he faults counsel for not questioning, nor does he offer any information as to why or how the [confidential informant] was incredible." [United States' Resp. at 7 (footnote omitted)]. The Court agrees with the United States' assessment of Mr. Price's allegations; they are indeed too skeletal to warrant the extraordinary remedy of § 2255 relief.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (quotation omitted); *see United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature."). So the mere allegation that an attorney did not elect to impeach a witness—which is all that Ms. Price alleges here—cannot establish deficient performance. *See Warner v. Ford*, 752 F.2d 622, 625 (11th Cir. 1985) ("Silence can constitute trial strategy."). Besides, Mr. Price's attorney did cross-examine both Investigator Garrison and the confidential informant, Marcus Gregory, and her cross examination included efforts on her part to impeach both of these witnesses. *See* [Trial Tr. at 106–32, 152–72]. Mr. Price therefore fails to establish deficient performance on his attorney's part, and his claim also fails because does not allege prejudice.

5. Failure to Interview Witnesses

Next, Mr. Price claims that his attorney was ineffective for failing to interview witnesses who would "attest to the ACTUAL facts of this case," [Pet'r's Mem. at 7], but the United States discredits his claim by arguing that he "does not identify any of the potential witnesses by name, nor provide any summary of the substance of their expected testimony," [United States' Resp. at

18

8]. In the United States' view, these shortcomings are "fatal to his claim," [*id.*], and the Court agrees.

"The decision whether to call a witness to testify at trial is a matter of strategy that falls squarely within defense counsel's domain," *Javaherpour v. United States*, Nos. 4:04-cv-38, 4:01-cr-11, 2007 WL 1041266, at *3 (E.D. Tenn. Apr. 6, 2007), and for this reason, "[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant," *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation omitted); *see Caldwell v. Lewis*, 414 F. App'x 809, 815–16 (6th Cir. 2011) ("[A]n attorney's failure to present available *exculpatory* evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it." (emphasis added) (quotation and citations omitted))). Mr. Price does not allege that any of the unnamed witnesses would have exculpated him of the offenses with which he was charged. Instead, he alleges only that his attorney should have interviewed these witnesses to establish their "credibility" as impeachment witnesses. [Pet'r's Mem. at 7]. Mr. Price therefore fails to demonstrate deficient performance on his attorney's part, and as before, his claim also fails because he alleges no appreciable form of prejudice.

### 6. Failure to Devise an Effective Defense

Lastly, Mr. Price faults his attorney for "fail[ing] to demonstrate a reasonable defense," the absence of which, he alleges, caused him prejudice not only because the jury convicted him but also because the Court sentenced him to 168 months' imprisonment. [*Id.*]. But Mr. Price's allegation that his attorney failed to mount a "reasonable defense" is bereft of any detail, and this lack of detail scuttles his claim. The Sixth Amendment does not entitle defendants to a perfect defense, *see Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (stating that "the Sixth Amendment guarantees reasonable competence, not perfect litigation" (citation omitted)), so Mr. Price must

19

do more than carp about his attorney's defense strategy by engaging in "Monday-morning quarterbacking of [her] strategic decisions," *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) (citations omitted). Indeed, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes*, 258 F.3d at 457 (citation omitted); *see also United States v. Kortright*, No. 99-1225, 2000 WL 232291, at *1 (2d Cir. Jan. 25, 2000) ("[The petitioner] cannot succeed in his claim, however, because displeasure with defense counsel's trial strategy is not sufficient to establish ineffectiveness[.]" (citation omitted)).

Mr. Price's cursory, after-the-fact characterization of his attorney's trial strategy as "[un]reasonable," without any elaboration as to why it was unreasonable, hardly suffices to show that her defense of Mr. Price was so ill-conceived or ill-executed that it "permate[d] the entire trial with obvious unfairness." *Hughes*, 258 F.3d at 457; *see Morrice v. Jackson*, No. 1:18-cv-1398, 2022 WL 969677, at *1 (W.D. Mich. Mar. 31, 2022) ("Even though Petitioner disagrees with his counsel's strategy now, a difference in opinion after the fact is not enough to support a claim of ineffective assistance of counsel." (footnote omitted) (citing *Strickland*, 466 U.S. at 690))); *Carson v. United States*, No. 1:17 CR 00008, 2022 WL 845478, at *5 (N.D. Ohio Mar. 22, 2022) ("Courts are highly deferential to the trial strategy of lawyers, and [the petitioner] cannot establish ineffective assistance of counsel by simply disagreeing with [his attorney's] tactical choices." (citing *Strickland*, 466 U.S. at 689)). The Court will not, and cannot, "second-guess" Mr. Price's attorney's trial strategy in the absence of substantive allegations that cast a pall of unreasonableness over them. *Strickland*, 466 U.S. at 689. Mr. Price's claim of ineffective assistance of counsel therefore fails.

### B. Section 4B1.1's Career-Offender Enhancement

Next, in a volley against the legality of his sentence, Mr. Price also contends that he did not qualify as a career offender under USSG § 4B1.1 and that the Court's application of the enhancement was "improper." [Pet'r's Mem. at 10]. But the United States correctly asserts that Mr. Price's argument is a nonstarter because the Court declined to apply the enhancement to Mr. Price:

> I have already stated my conclusion that a guideline range sentence here within the career offender guideline range is unduly harsh, and I have significant concern about the application of the career offender guideline at all here for the reasons I've expressed[.]
>
> . . . .
>
> So, Mr. Price, here's what I'm going to do, I'm going to impose a sentence within the guideline range that would have applied to this case without the career offender enhancement because I think in this case the career offender enhancement is flawed and its application is unjustified. I am, however, because of the repeat nature of your conduct going to impose a sentence at the top of that guideline range.

[Sent. Hr'g Tr., Doc. 133, at 60:19–23, 63:7–14, No. 2:16-CR-00087-1-JRG-MCLC].

In any case, even if the Court did elect to apply § 4B1.1's enhancement, Mr. Price has procedurally defaulted on any argument that the Court erred in doing so, as the United States contends. Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a § 2255 petition unless he can establish cause and prejudice to excuse his failure. *Huff v. United States*, 734 F.3d 600, 605–06 (6th Cir. 2013). The "hurdle" that a petitioner must vault to excuse procedural default is "intentionally high . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citation omitted). The element of cause requires "good cause" for the petitioner's failure to raise his claims on direct appeal, and the element of prejudice requires a showing that he "would suffer

prejudice if unable to proceed" with those claims. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)).[6]

Mr. Price has not replied to the United States' assertion that he has procedurally defaulted on his claim, and he fails to raise any colorable argument that cause and prejudice entitle him to raise this claim in a § 2255 proceeding, or any argument regarding a fundamental miscarriage of justice. The doctrine of procedural default therefore bars his claim. *See Simmons v. Schweitzer*, No. 16-4170, 2017 WL 4980159, at *2 (6th Cir. Apr. 5, 2017) ("Reasonable jurists could not disagree with the district court's conclusion that this claim is procedurally defaulted because [the petitioner] offers no colorable argument that cause and prejudice excuse his default, or that the failure to excuse his default would result in a fundamental miscarriage of justice."); *United States v. Israel*, Criminal Action No. 5:14-98-DCR-CJS; Civil Action No. 5:17-312-DCR-CJS, 2018 WL 3212071, at *5 (E.D. Ky. Feb. 12, 2018) ("As Defendant has not made any effort to show cause and actual prejudice exist to excuse his procedural default, and Defendant has not satisfied the requirements of the actual innocence exception, Defendant's claim . . . is procedurally defaulted."). Mr. Price therefore fails to demonstrate that he is entitled to the extraordinary remedy of § 2255 relief, not only because his claim lacks merit but also because he has procedurally defaulted on it.

---

[6] Rarely, a defendant who fails to establish cause and prejudice can still obtain review of his post-conviction claims if it is necessary to avoid a fundamental miscarriage of justice, as when a defendant is able to show his actual innocence by submitting new evidence to the Court. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see Bousley*, 523 U.S. at 622–24 (stating that "'actual innocence' means factual innocence, not mere legal insufficiency" (citation omitted)); *see also McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (stating that the actual-innocence exception deals with a "severely confined category [of] cases in which new evidence shows 'it is more    likely than not that no reasonable juror would have convicted [the petitioner]'" (quotation omitted)); *Jamison v. Collins*, 100 F. Supp. 2d 521, 533 (S.D. Ohio 1998) ("To demonstrate a 'fundamental miscarriage of justice,' a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent." (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986))). Ms. Price, however, does not allege that a review of his claims is necessary to avoid a fundamental miscarriage of justice.

22

**C. Certificate of Appealability**

Finally, the Court must determine whether to issue a certificate of appealability, which is necessary for Mr. Price to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must show that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having considered and addressed the merits of Mr. Price's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court therefore declines to issue a certificate of appealability to Mr. Price.

## IV.   CONCLUSION

As the petitioner under § 2255, Mr. Price fails to meet his burden of establishing that his conviction and sentence are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. His Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] is therefore **DENIED**. The Court will enter an order consistent with this opinion.

ENTER:

_____
                                    s/J. RONNIE GREER
                         UNITED STATES DISTRICT JUDGE